580

THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, DANIEL LÓPEZ PRITCHARD, JUDGE, Respondent.

No. C-63-98.     Decided June 30, 1965.

*Hiram R. Cancio, Secretary of Justice, J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for petitioner. *Robert H. Rout* for intervener, Eagle Broadcasting Corporation. *Manuel Abréu Castillo* for the Bar Association, as amicus curiae. *W. H. Beckerleg,* as amicus curiae.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The question for decision in this case is not so much which language should be used in our courts in the trial of a defendant who does not know Spanish well, but whether an attorney admitted to the Puerto Rican bar who does not have sufficient command of our language is entitled to demand that the proceedings be conducted in the English language.

This case deals, according to the information, with a Puerto Rican corporation, organized under the General Corporations Act of Puerto Rico, approved January 9, 1956, which failed to file at a certain date with the Secretary of the Treasury, as required by law, the annual report corresponding to the year 1961 containing a general balance of the financial condition of the corporation, and other data, including a statement of its profits and losses during said year. Its legal representation was assumed by Mr. Robert H. Rout, who after several postponements, upon appearing at one time at the trial, stated "that he was not prepared to argue the case in Spanish."[1] The trial judge considered that "in view of the contention made by counsel for the defense, it should be definitively determined whether or not the court has power to order the case to be argued in Spanish." In another occasion Mr. Rout, again the legal representative of three other corporations likewise under prosecution, withdrew his petition that the proceedings against said three corporations be conducted in English "because they had retained the services of another attorney to join the defense and that therefore the cases could be argued in Spanish."[2]

After both the attorney for the defense and the prosecuting attorney filed their memoranda, the question was decided in open court,[3] whereupon the judge and the attorneys

---

[1] Minutes of August 19, 1963.

[2] Minutes of September 30, 1963.

[3] Transcript of the record of the hearing of October 7, 1963.

made lengthy statements from which we deem it pertinent to copy the following:

"THE COURT: The defendant and its attorney as well as the prosecuting attorney are present in this case. The parties shall remember that this case was originally called together with the cases of Franciscus Real Estate Co. and Associates, Inc., First Property Management, Inc. and Yunque Estates, Inc. The cases were originally called on August 19, 1963, Mr. Rout having appeared on behalf of the four corporations and stated *that he was not prepared to argue these cases in Spanish because he did not have sufficient command of the Spanish language to hold a hearing in that language*. The prosecuting attorney objected, and on that day, considering that the court's stenographer was not able to take the stenographic record in English, and considering the interesting point that was being raised by the attorney for the defense, the court granted him until October 29, 1963 to file a memorandum of authorities, and to the prosecuting attorney until September 6 to reply, the case being set for September 9, 1963 for the continuation of the hearing and for the discussion *of the motion that the case be argued in English*.

"On that date, in view of the fact that the parties had not been able to file their memoranda within the term fixed to each one, respectively, the case was again set for September 12, 1963 for the discussion *of the petition of defendant's attorney that he be authorized to conduct the proceedings in the English language*. On September 12, 1963 the defendants appeared through their attorney, Mr. Robert H. Rout, and the prosecuting attorney represented by Mr. Carlos Noriega, and in view of the fact that the prosecuting attorney was not ready to argue the case that day, after an oral exposition elaborating the grounds set forth in his memorandum, the hearing as well as the discussion of the motion were postponed to September 24, 1963. On that day, the Administrator Judge for Civil cases, Mr. César Bobonis, was asked to designate stenographer Carmelo Pérez to take the notes, because, according to the information obtained by the court, he was the only stenographer in the metropolitan zone with sufficient knowledge to take the proceedings in English, if necessary, and the hearing was postponed for September 30, 1963.

"On September 30, 1963 the cases were again called for hearing and to argue the motion and for the hearing on the merits, if necessary. Mr. Rout and the prosecuting attorney appeared and stated that the parties were ready for the hearing and for the discussion of Mr. Rout's motion. Mr. Rout stated that he withdrew Franciscus Real Estate, the First Mortgage Management, and Yunque Estates, Inc., from his petition at the request of said defendants, adding that for the hearing of those cases he would use the services of his colleague who would join him at the hearing. However, he maintained his petition in the case for Eagle Broadcasting Corporation.

"In view of this situation the parties stated that they were ready for the hearing and the discussion *of the petition that the case be argued in English,* and both parties made lengthy arguments in support of their points of view, leaving the matter to be decided by the court today.

"The court has carefully examined the briefs filed by the parties, has made its own study as to the provision of law, and has found that several points of view were explained at the hearing which are stated and elaborated in the briefs of the parties.

"In order to decide this motion the court *has taken into consideration the administrative problems which this motion might cause to the administration of justice.*

"*If the court were to grant counsellor's petition it would mean almost a complete paralyzation of the judicial proceedings.*

"In the first place, the stenographers are not required to have full command of the English language in order to act as stenographers. In the second place, it would imply the need of the translation of almost all the proceedings from English into Spanish and from Spanish into English, since the prosecuting attorney would argue in Spanish and the defense in English, or vice versa, and it would create great difficulties, *particularly for the ladies and gentlemen of the jury who are only required by law to write and speak Spanish but not English.* We do not see how adequate justice can be done where an interpreter gives his own interpretation of the statements of the parties which fail to carry to the ladies and gentlemen of the jury the same feeling, the same inflections in the voice, different inflections of voice which entail different thoughts and which upon being

translated substantially lose to some degree the sense meant by those words.

"However, the court, notwithstanding all these facts, *finds that the provision of law is clear and conclusive.* Section 51 of Title I of the Laws of Puerto Rico Annotated says that in all government state departments, *in all the courts of the island* and in all the public offices, *the English and the Spanish language shall be used indiscriminately.*

"We have tried to find some legislative justification why *section 5* of the Act of February 21, 1902, known as the Language Act, which is § 55 of Title I of the Laws of Puerto Rico Annotated, *we have tried to investigate why this Act was not made applicable to municipal courts or offices of any municipality.* Because of our limitation in time we have been unable to find any information, *for which reason we may only assume that the legislator had in mind this exception because of the innumerable difficulties it would create.* However, we have to take into consideration that this legislation was approved in the year 1902, shortly after the termination of the military system which prevailed in Puerto Rico at that time. *We have no evidence that the legislative intent was that both languages be used indiscriminately.* It is not the duty of the court to legislate but merely to construe our legislation. If notwithstanding the amendments that have been made in Puerto Rico the Legislature of Puerto Rico has not considered that this provision of law should be amended, notwithstanding the fact that the court has knowledge of the great number of attorneys with seats in the Legislature of Puerto Rico, and who must be acquainted with this provision of law; if the Legislature has not decided, for different reasons of its own, to amend this provision of law, the only thing left for us to do is to apply it as it has been enacted.

"*We sympathize deeply with the position of the Prosecuting Attorney.* We believe that he has made an excellent approach of the situation. *In our position of administrator judge we understand that this decision will bring innumerable administrative difficulties.* We sincerely sympathize with the position assumed by the Prosecuting Attorney *because we believe that it should be so,* but we cannot always be carried away by our sympathy. The law is clear and thus we must apply it, for which reason *the court grants the petition of counsellor Rout in this*

*case.* Considering that the colleague does not fully understand the Spanish language, the court shall now make a brief summary of our ruling for his own information.█

"Attorney Rout, the court has just stated that we have made a detailed study of your memorandum of law and authorities, and also of the one submitted by the District Attorney in this particular case. We feel that *the conclusion that we have reached will create a very difficult problem for the administration of justice,* for various reasons we don't have the evidence, the person, we don't have the contact between the attorney and the jurors in case of trial by jury, and lots of points of fact will be lost, because when you have a translator we don't have the faithful alterations of the voice where the point is made or has been submitted personally.

"We sympathize with the District Attorney that all proceedings should be in Spanish. However it is felt by the court that since this law was approved in 1902 when we still had at the time when the military government had finished we had no doubt that the intent of the legislature at the time was that the language used could be either Spanish or English *without any distinction or preference among them.* As the years went by, despite the fact that there are attorneys in our legislature, they have not deemed it advisable of an amendment. It is not our mission to legislate. Our mission is to interpret the law as we see it without any miscarriage of justice. In spite of our sympathy, our personal feeling that this case be carried out in Spanish, we are obliged to interpret the law as it is and not as we would like to interpret it. *There is no doubt in my mind that we may have a miscarriage of justice and administrative difficulties only to carry out the intent of the legislature* stated in Article 1 of this law which is section 51 of Title I of the Laws of Puerto Rico Annotated, which you cite in your memo *the court finds that you are correct in what you have raised and therefore decides that the proceedings be carried out in English, the district attorney can address the court in Spanish and you may address the court in English. If you wish a specific translation, it will be translated. The district attorney understands English so we don't have need of an interpreter for*

*the district attorney.* How do you want to work out the actual mechanics in this particular case? You want to have the court act as an interpreter or do you want any other interpreter? Fortunately we have the reporter of the court who takes both English and Spanish.

"MR. ROUT: I am not sure. It is up to me to state [*sic*].

"THE COURT: The court decided *that you have the right to use the English language.* It is now up to you how do you want it to be carried on.

"MR. ROUT: If I have that freedom, *I would like the testimony of the witnesses translated. That would be all.*

"THE COURT: The court asks the Prosecuting Attorney if he has understood it?

"PROSECUTING ATTORNEY: Yes, Your Honor.

"THE COURT: *In this case the translation must be from Spanish into English because the Prosecuting Attorney understands English.* Then, we must translate from the Spanish into English and not from English into Spanish. The parties are ready for the hearing of the case, or do they wish to take any other action?

"PROSECUTING ATTORNEY: With the leave of the court, very respectfully. We have heard the statements of the court and it pleases us greatly that the court sympathizes with the position of the Prosecuting Attorney, which is a position that must have the sympathy of the court as a Puerto Rican.

"THE COURT: I even go further. We have not decided in favor of the Prosecuting Attorney because we have not found, in our opinion, the basis to do so *if the law were not so clear we would not have granted the petition,* but we do not have the time nor the necessary library to make an exhaustive study, but we do believe that it is worth while to study and find out why this Act was not extended to the municipal courts. It must have been for some practical reason and if a study could be made into the merits by any other agency and the matter taken to a higher court, to any place, which could decide this situation definitively, because *we understand that this will create a difficult administrative situation,* but our duty is to apply the law just as we understand it. The Act, in our opinion, is clear in that sense.

"PROSECUTING ATTORNEY: On this point I wish to state to the court that the position of the Prosecuting Attorney ought to be correct, and I believe that the position of the Prosecuting Attorney must be correct, and if there is no way out we must make a way because I think that to permit this, to tolerate this is simply to undermine little by little the culture of this country, it is an assault against the fundamental principles that a human being must express himself in his own language, that we are the majority, I do not see why a minority must impose its foreign language on us. We have our minds set, with due respect to the court, and we ask the court to order the stenographer to transcribe the record of the whole proceeding, of all the arguments had during the hearings of the motion, because we intend to go to the Supreme Court by way of certiorari and we shall do everything possible, everything within our reach to see that the certiorari reaches the Supreme Court and to see that the Supreme Court issues a certiorari, and if the Supreme Court should decide against us we shall find the means to have it reviewed.

"THE COURT: It is fair to explain, for the purpose of the record, *that any person, no matter his nationality, is within his full right to make use of all such powers as are granted by law,* and even this judge, if it were before the bar, and being able to speak English or Spanish indistinctly, because the fault does not lie with the person who is making use of the right which the Legislature granted him. Now, if the legislators believe that this situation is not correct, they are the ones who must legislate. I do not believe that we should do so. We wish to explain that our position is not to criticize neither the Legislature nor any other government. This is in connection with the statements made by our colleague, since *Mr. Rout is perfectly within his right to address this court in English because that Act has authorized him to do so.* We are giving this explanation because it might be understood that we are judging here an ideological question which is not the reality. We are judging here a right, whether or not it is granted by the Legislature of the Commonwealth of Puerto Rico." (Italics ours.)

We issued the writ of certiorari at the request of the Secretary of Justice.

## I

It is a fact not subject to historical rectification that the vehicle of expression, the language of the Puerto Rican people —integral part of our origin and of our hispanic culture— has been and continues to be Spanish. So far during the 20th century the continuous reclamation exercised by these roots and the reality of our cultural and ethnic formation have made Spanish prevail without ostensible loss in the more intimate and representative manifestations of our daily life: home, school, religion, business, literature, politics, labor relations, and general activities of government. On the other hand, the resulting need of our citizenry for a greater capacity to transmit and receive ideas in the English language, for the better understanding of our fellow citizens of the United States, both here and there, and the demands of an economy in rapid growth due to the impact of active programs of industrialization, housing, tourism, and others of diverse kinds, including projects matched with federal funds, have required a continuous effort of improvement in the processes of adjustment which that new social and economic reality brings forth with regard to the means of expression by which people of common citizenship, who to a greater or lesser degree are not always bilingual, communicate with and understand each other.

## II

The determining factor as to the language to be used in judicial proceedings in Commonwealth courts does not arise from the law of February 21, 1902,[4] which Mr. Rout invoked

---

[4] Section 1 of the aforesaid Act of February 21, 1902 (1 L.P.R.A. § 51) provides: "In all the departments of the Commonwealth Government and in all the courts of this island, and in all public offices the English language and the Spanish language shall be used indiscriminately; and, when necessary, translations and oral interpretations shall be made from one language to the other so that all parties interested may understand any proceedings or communications made therein."

in support of his petition that the trial be held in English because he did not have good command of Spanish.[5] It arises from the fact that the means of expression of our people is Spanish, and that is a reality that cannot be changed by any law.[6]

Spanish is the language used in judicial proceedings in more than 15,000 criminal cases and more than 32,000 civil cases decided in 1963–64 by the Superior Court and in more than 220,000 criminal cases (including 145,000 traffic cases) and more than 28,000 civil cases decided over the same period by the District Court. The determining factor is established by the necessity for gathering in the trial of all accused persons those ingredients of due process of law, of fair and impartial trial, of efficient defense and of equal justice guaranteed by the Constitution and the laws, regardless of the language used in the proceedings.

For this the citizen has, among others, the right to be informed of the nature of the charges against him and of being faced with the prosecution witnesses, besides having the right to communicate with his lawyer during the trial, for which it is indispensable that he understand what is happening in the trial. If the accused does not know the language in which the proceedings are being conducted, it is imperative, by the natural reason that serves as a basis for the con-

---

[5] Mr. Robert H. Rout was admitted to the Bar in Puerto Rico by this Court by motion and without examination under the provisions of the former Rule 8(b) of our Rules. He took his oath in Spanish on January 31, 1959. In the affidavit in support of his motion he stated that he lived in Puerto Rico since February 1, 1958 and that he had the intention of continuing his residence here with his family.

[6] Section 42 of the Federal Relations Act provides that all pleadings and proceedings in the District Court of the United States for Puerto Rico shall be conducted in English; and § 44 establishes as one of its requirements for acting as jury in said court that he shall "have a sufficient knowledge of the English language to enable him to serve as a juror." These requirements are in harmony and maintain the tradition that all judicial proceedings shall be conducted in the English language throughout the federal jurisdiction.

stitutional guarantees of due process of law, of fair trial, of efficient defense and of equal justice that he be provided the means to understand and be aware of the steps in the process in which his freedom may be at stake. Among these means is the designation of translators to render into his language anything that happens in court in a language different from his own.

As regards judicial proceedings in court, the Act of February 21, 1902, in providing that "the English language and the Spanish language shall be used indiscriminately" can only have a directive scope, *cf. RCA Communications* v. *Registrar*, 79 P.R.R. 73 (1956), and does not grant either the accused or his lawyer the right to choose the language in which the trial is to be conducted. The direction of proceedings in court and the adoption of measures that will guarantee a fair trial to the accused is up to the judges, not the lawyers. Spanish being the language of Puerto Ricans, judicial proceedings in our courts must continue in Spanish, but judges will take whatever steps they consider necessary to protect the rights of any accused who does not know our language sufficiently by keeping him—and his lawyer, of course, since that is part of his right to efficient defense—informed, by means of translators or other efficient means, of all that happens in the trial, and to have it so shown in the record.

For the reasons stated, the order of the trial court ordering that the proceedings in the case at bar be conducted in the English language shall be set aside and the case remanded for further proceedings not inconsistent with this opinion.